IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| RICHARD A. ATKINSON, M.D., PATRICIA B. ATKINSON, et al., on behalf of themselves and all others similarly situated, ) ) ) ) ) ) ) ) Plaintiffs, ) ) v. ) ) MORGAN ASSET MANAGEMENT, INC., ) MORGAN KEEGAN & COMPANY, INC., ) MK HOLDING, INC., REGIONS FINANCIAL CORPORATION, REGIONS BANK, MK HOLDING, INC., et al., ) ) ) ) ) ) ) ) ) Defendants. ) | Case No. 08-2694 |

---

ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND DISMISSING
PLAINTIFFS' ACTION

---

Plaintiffs filed this putative class action in the Chancery Court of Shelby County, Tennessee, on September 18, 2008. (Notice of Removal ¶ 1.) Defendants, relying on 28 U.S.C. §§ 1441 and 1446 and the applicable provisions of the Securities Litigation Uniform Standards Act of 1998

("SLUSA"), 15 U.S.C. §§ 78bb(f) and 77p[1], removed it to this
Court on October 14, 2008.  (Id. at 2.)  Defendants
maintain that the Court has subject matter jurisdiction
under 28 U.S.C. §§ 1331 and 1367.  (Id. at ¶ 6.)

On January 15, 2009, the Plaintiffs moved the Court to
remand the action to state court.  Defendants responded on
February 17, 2009.  Plaintiffs replied on March 4, 2009.
Defendants filed a sur-reply on March 24, 2009, and the
Plaintiffs filed a sur-sur-reply April 1, 2009.  For the
following reasons, Plaintiffs' motion to remand is DENIED.
Because this Court has determined that the Plaintiffs have
failed to come within SLUSA's first "Delaware Carve-Out,"
15 U.S.C. § 77p(d)(1)(B)(i), the Court DISMISSES
Plaintiffs' action WITH PREJUDICE.

I.   BACKGROUND

During the relevant period, Plaintiffs were holders of
shares in Regions Morgan Keegan Select Short Term Bond Fund
("Short Term Fund"), Regions Morgan Keegan Select
Intermediate Bond Fund ("Intermediate Fund") and Regions
Morgan Keegan Select High Income Fund ("High Income Fund")
(collectively, "the Funds").  They bring this action on
behalf of a putative class of persons who were holders of

---

[1] SLUSA amended two separate sections of the securities code in
substantially identical ways.  See 15 U.S.C. §§ 78bb(f) and 77p.  The
Court will cite to the text found in § 77p for convenience.

the Funds against Morgan Asset Management, Inc. ("Morgan Asset"), Morgan Keegan & Company, Inc. ("Morgan Keegan"), Regions Financial Corporation ("Regions"), Regions Bank, MK Holding, Inc. ("MK Holding"), a number of individual defendants[2], and PricewaterhouseCoopers ("PwC"). (Compl. at ¶¶ 36-69.) Plaintiffs allege breach of contract, violations of the Maryland Securities Act, Md. Code Ann., Corps. & Ass'ns, §§ 11-101, et seq. (2008), breach of fiduciary duty, negligence, and negligent misrepresentation. (Id. at ¶¶ 361-480.) Plaintiffs also allege violations of federal law, but they have limited their causes of action to those solely under state law and do not seek relief under federal law. According to Plaintiffs, this lawsuit "is designed to complement [the Atkinson[3] action]. . . in an effort to maximize the recovery of the extraordinary losses incurred by investors in the Funds in the summer and fall of 2007." (Id. at ¶ 5.)

In considering the Atkinson case, this Court described the factual background as follows:

---

[2] Allen B. Morgan, J. Kenneth Alderman, Jack R. Blair, Albert C. Johnson, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, Archie W. Willis, III, Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, Michele F. Wood, James C. Kelsoe, Jr., and David Tannehill. (Compl. ¶¶ 42-63.)

[3] The Atkinson action is a putative securities class action case brought by some of the same named plaintiffs in this case on behalf of themselves and others similarly situated. In Atkinson, the plaintiffs seek recovery under federal securities law. (Compl. at ¶ 8.)

Morgan Keegan Select Fund, Inc. ("MK Select") is an open-end management investment company that consists of three portfolios: Regions Morgan Keegan Select Short Term Bond Fund ("Short Term Fund"), Regions Morgan Keegan Select Intermediate Bond Fund ("Intermediate Fund"), and Regions Morgan Keegan Select High Income Fund ("High Income Fund"). (Atkinson Am. Compl. ¶ 7.) Collectively, these three funds are referred to as the "Open-End Funds."

Morgan Asset Management, Inc. ("Morgan Asset") managed and advised the Open-End Funds during the relevant time period. (Atkinson Am. Compl. ¶ 28.) . . . . Morgan Keegan & Company, Inc. ("Morgan Keegan"), a broker/dealer that provided accounting and administration services for the funds, was also paid a fee based on the net assets in each fund. MK Holding, Inc. (the parent company of Morgan Asset) and Morgan Keegan are wholly owned subsidiaries of Regions Financial Corporation ("Regions").

In July, 2007, Morgan Keegan disclosed that its proprietary funds were experiencing challenges because of "rising short term interest rates, extremely tight spreads in credit markets, and volatility in sub-prime mortgage markets." (DeJoseph Compl. ¶¶ 6, 64.) In August, Morgan Keegan revealed that the "recent instability in the market for fixed income securities, particularly mortgage-backed securities, has affected the liquidity of the Funds portfolio." (Hartman Compl. ¶ 51; DeJoseph Compl. ¶ 8.) Given the difficulty Morgan Keegan had in valuing the assets in its portfolios in the absence of market demand, "the Board of Directors [] retained an independent valuation consultant to assist in determining the fair value of certain of the Funds portfolio securities." (Id.)

The funds sustained significant losses during 2007. The Open-End Funds lost between 16.4 percent and 61.4 percent of their total value. (Atkinson Am. Compl. ¶¶ 68-70.) . . . . Plaintiffs contend that these losses are magnitudes greater than those suffered by similar

funds and support the argument that Defendants pursued an unusually risky investment strategy. (Atkinson Am. Compl. ¶ 71.) According to Plaintiffs, Defendants' investment strategy, which focused on collateralized debt obligations ("CDOs"), including mortgage-backed and asset-backed securities, violated securities laws and was not adequately disclosed to investors. (Atkinson Compl. ¶¶ 1, 275, 285, 293, and 297.)

(Atkinson, et al. v. Morgan Asset Mgmnt, Inc., et al., CA 07-2784, Order Granting in Part and Denying in Part Mots. at 4-7 (footnotes omitted).)

This state-law action is intended to ensure that the Plaintiffs recover from Defendants for the losses the Funds sustained. In their breach of fiduciary duty counts, Plaintiffs allege that individual and corporate officers and directors violated their fiduciary duty to act in good faith, in a manner they reasonably believed to be in the best interests of the Funds, and with the care that an ordinarily prudent person in a like position would use in similar circumstances. (Compl. at ¶¶ 386, 389, 398.) The officers and directors' failure to manage the Funds in compliance with the Funds' stated investment objectives and policies violated § 13 of the Investment Company Act of 1940. (Id. at ¶¶ 388, 396.) Plaintiffs also allege that the officers and directors "did not act in good faith but intentionally, in bad faith, with gross negligence or reckless disregard of their duties and of the information

readily available to them regarding the manner in which the Funds were being managed, engaged in waste of the Funds' assets and, in so doing, breached their fiduciary duties." (Id. at ¶ 389; see id. at ¶ 398.)

Plaintiffs assert that Morgan Keegan was negligent by breaching its duty of care to assure that:

(a) The Funds stated their financial statements accurately, completely and fully in compliance with GAAP and performed their audits in accordance with GAAS;
(b) The Funds management and directors were informed of those matters which, under the circumstances pertaining to the Funds in 2006, they should have been informed, as described herein;
(c) The Funds were being properly managed in compliance with their respective investment objectives, policies and restrictions;
(d) The Funds registration statement and prospectus used by the MK Defendants to sell the Funds' shares in 2006 and 2007 did not contain fraudulent or misleading financial information.

(Id. at ¶ 407.) Defendants assert that they properly removed this action to federal court under SLUSA. See 15 U.S.C. § 77p(c) (stating that "[a]ny covered class action . . . shall be removable"). Plaintiffs contest that assertion through the present motion.

## II. STANDARD OF REVIEW

On a motion for remand, the defendant bears the burden of establishing that removal was proper. Long v. Bando Mfg. of America, Inc., 201 F.3d 754, 757 (6th Cir. 2000).

Removal under 28 U.S.C. §§ 1441 and 1446 is appropriate when federal jurisdiction existed at the time of removal, without consideration of subsequent events. Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 375 (6th Cir. 2007). "The removal petition is to be strictly construed, with all doubts resolved against removal." Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit, 874 F.2d 332, 339 (6th Cir. 1989) (citing Wilson v. USDA, 584 F.2d 137, 142 (6th Cir. 1978)).

Removal jurisdiction requires a showing that a federal court has original jurisdiction over the action, either through: (1) diversity of citizenship under 28 U.S.C. § 1332; or (2) federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441.

### III. Analysis

In 1995 Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z-1 and 78u-4, to impose heightened pleading standards on actions brought under federal securities laws, mandate the imposition of sanctions for the filing of frivolous lawsuits, authorize district courts to stay discovery pending the disposition of any motion to dismiss, and restrict the selection of lead plaintiffs. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 81

(2006).   Litigants  sought  to  evade  these  new  procedural restrictions by filing suit in state courts.  See id. at 88 (noting that before passage of the PSLRA, litigants filed "no  significant  securities  class  action  litigation"  in state courts).   Congress enacted SLUSA to prohibit this shift of securities litigation from federal to state courts so that plaintiffs could not thwart Congress's intent to make  federal  courts  "the  sole  venue  for  class  actions alleging  fraud  in  the  purchase  and  sale  of  covered securities."  Behlen v. Merrill Lynch, 311 F.3d 1087, 1091-92 (11th Cir. 2002).

SLUSA provides that:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--

(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

(2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).  A defendant may remove "[a]ny covered class action brought in any State court involving a covered security."   Id. § 77p(c).   For purposes of the present suit, the statute defines a "covered class action" as one in which "one or more named parties seek to recover damages

8

on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to . . . members of the prospective class predominate." Id. § 77p(f)(2)(i)(II). A "covered security" is one that satisfied the standards established in paragraph (1) or (2) of Section 18(b) of the Securities Act of 1933 at the time the alleged misrepresentation or omission occurred. Id. § 77p(f)(3). Both parties agree that the present suit qualifies as a "covered class action" and that the securities sold qualify as "covered securities" under SLUSA. (Plaintiffs' Memorandum of Law in Support of their Motion to Remand at 4 ["Pls.' Memo"]; Defendants' Memorandum in Opposition ["Defs.' Resp."] at 5.) If a covered class action does not qualify for one of SLUSA's statutory exemptions, known as the "Delaware Carve-Outs,"[4] SLUSA precludes[5] the suit and dismissal is required. See 15 U.S.C. § 77p(b); see also Kircher v. Putnam Funds Trust, 547 U.S. 633, 644 (2006) ("If the action is

---

[4] The Delaware Supreme Court coined the term "Delaware carve-out" in its opinion in Malone v. Brincat, 722 A.2d 5, 13 (Del. 1998). Despite this neologism, Delaware Carve-Outs apply in actions filed under the laws of all fifty states and the territories of the United States. See 15 U.S.C. § 77p(d).

[5] Although several courts have referred to SLUSA as a pre-emption statute, the Supreme Court has clarified that it is more properly characterized as a "preclusion" statute "because SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims." Dabit, 547 U.S. at 87.

precluded, neither the District Court nor the state court may entertain it, and the proper course is to dismiss."').

The Plaintiffs argue that remand is proper for two reasons. First, the Plaintiffs assert that their suit meets the requirements to come within the first Delaware Carve-Out, thereby exempting it from dismissal. (Pl. Memo at 5-9.) Alternatively, the Plaintiffs argue that at least nine of their thirteen state-law claims are not based on misrepresentation or omission so that SLUSA does not apply. (Pl. Memo at 9-11.) The Defendants dispute both of these assertions.

### A.   The Delaware Carve-Out is Inapplicable to Plaintiffs' Suit

SLUSA provides that, notwithstanding its general prohibition on state-law class action claims alleging omissions or misrepresentations, an action is not precluded "if it involves the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer." 15 U.S.C. § 77p(d)(1)(B)(i). This provision has become known as the first Delaware Carve-Out.

Plaintiffs argue that the first Delaware Carve-Out exempts their suit from SLUSA preclusion. Specifically, Plaintiffs note that the Funds were contractually obligated

to purchase the Plaintiffs' shares when Plaintiffs wished to redeem them. (Pls.' Memo at 7.) The Plaintiffs emphasize that they were not free to sell their Fund shares on the open market; rather, the Funds were the only entity authorized to purchase the shares. Thus, the Plaintiffs assert that they have come within SLUSA's first carve-out. The Defendants contend that Plaintiffs' arguments would exempt all open-end funds from SLUSA's preclusion provisions. (Defs.' Resp. at 14.) The Defendants also note that Plaintiffs have limited their claims to investors who <u>held</u> securities during the proposed class period. Therefore, the Defendants argue that Plaintiffs cannot meet the first carve-out's requirement that the claim involve a "purchase or sale of securities." (<u>Id.</u> at 13-14.)

The statute clearly establishes that to come within the first Delaware Carve-Out the claims must involve a "purchase or sale of securities." 15 U.S.C. § 77p(d)(1)(B)(i). Plaintiffs do not claim, however, that they purchased or sold their shares in the Funds during the proposed class period. Instead, they allege that "[t]his is a class action by persons who were <u>holders</u> of the Funds' shares . . . from March 1, 2007 through April 30, 2008." (Compl. at ¶ 1 (emphasis added).) Plaintiffs' entire complaint is based upon the "failure . . . to <u>redeem or</u>

<u>sell</u> their shares back to the Funds." (Pls.' Memo at 7 (emphasis added).) Plaintiffs do not complain that, during the stated class period, they purchased or sold shares of the Funds because of misleading information Defendants provided. Plaintiffs' complaint is that they <u>would have</u> sold their shares if the Defendants had not made material omissions in their disclosures. The plain text of the statute excludes Plaintiffs' claims from the first carve-out. <u>Cf.</u> <u>Dabit</u>, 547 U.S. at 86-87 (concluding that courts must interpret SLUSA's preclusion provisions broadly and requiring that plaintiff holders' claims be dismissed); <u>Crimi v. Barnholt</u>, No. C 08-02249 CRB, 2008 U.S. Dist. LEXIS 108469, at *10 (N.D. Cal. Sept. 17, 2008) (noting that "a claim that Defendants omitted material information which caused Plaintiffs to hold . . . stock is the quintessential securities fraud action preempted by SLUSA.").

Broadly interpreting the phrase "involves the purchase or sale of securities" in the first Delaware Carve-Out would also contravene the Supreme Court's holding in <u>Dabit</u> that courts are to read SLUSA's preclusion provisions broadly. <u>See</u> <u>Dabit</u>, 547 U.S. at 88 (it would be "inappropriate for courts to create additional, implied exceptions" to SLUSA preclusion). Were the Court to accept

Plaintiffs' interpretation, all class action suits by holders of shares in open-end funds would fall within the first carve-out, thereby exempting them from the heightened pleading requirements of the PSLRA.  Congress adopted SLUSA to "'prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives'" of the PSLRA.  Id. at 86. (quoting SLUSA § 2(5)).  To achieve that goal, Congress stated its intention that nationally traded securities be governed by national standards developed in federal court.  Id. at 87; see also Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative, & ERISA Litig.), 535 F.3d 325, 338 (5th Cir. 2008).  This Court, therefore, cannot interpret SLUSA's preclusion exceptions to exempt a significant portion of the national securities market, i.e., open-end funds, from the PSLRA's procedural protections and SLUSA's guarantee of a federal forum absent clear language from Congress to the contrary. Because Plaintiffs have pointed to no such statutory language and the text of the first Delaware Carve-Out does not exempt Plaintiffs' suit, SLUSA applies to the Plaintiffs' class action.

### B.  SLUSA Precludes All of Plaintiffs' Claims

Plaintiffs next assert that, even if their suit does not trigger the first Delaware Carve-Out, nine of their

thirteen claims[6] survive because they do not rely on allegations of "an untrue statement or omission of a material fact" or "employment of any manipulative or deceptive device or contrivance." See 15 U.S.C. § 77(p)(b)(1)-(2). Therefore, Plaintiffs ask the Court to remand the nine "surviving" claims to the Chancery Court. (Pls.' Memo at 9.) Defendants counter that all of Plaintiffs' allegations are based on omissions or other deception and that the Court must dismiss the present suit in its entirety. (Defs.' Resp. at 14-15.) Alternatively, the Defendants argue that one claim alleging misrepresentations or omissions in a covered class action is sufficient to require dismissal of the entire action under SLUSA. (Defs.' Resp. at 15.)

The Sixth Circuit has not addressed whether a district court may sever claims that do not allege misrepresentation or whether it must dismiss the action as a whole. Other courts have disagreed about what SLUSA requires. Compare White v. Lord Abbett & Co. (In re Lord Abbet Mut. Funds Fee Litig.), 553 F.3d 248, 256 (3d. Cir. 2009) (concluding that SLUSA only requires dismissal of the improper claims), and Falkowski v. Imation Corp., 309 F.3d

---

[6] The Plaintiffs misnumbered their original complaint, filed in the Shelby County Chancery Court, to identify only twelve causes of action. See Compl. at 3. This order refers to the second "Count XI" as Count XII and the original "Count XII" as Count XIII.

1123, 1128-32 (9th Cir. 2002), as amended by 320 F.3d 905 (9th Cir. 2003) (same), with Superior Partners v. Chang, 471 F. Supp. 2d 750, 758 (S.D. Tex. 2007) (concluding that a court must either dismiss or remand the entire action), and Greaves v. McAuley, 264 F. Supp. 2d 1078, 1085 (N.D. Ga. 2003) (same). The Court need not address this split of authority, however, because a review of the complaint establishes that SLUSA precludes all of the Plaintiffs' claims. See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1288 n.6 (10th Cir. 2008) (declining to address the issue of whether SLUSA precludes claims or entire actions because each claim was individually precluded).

Plaintiffs concede that SLUSA precludes Claims IV and V, alleging violations of the Maryland Securities Act, and Claims XII and XIII, charging negligent misrepresentation against the RMK Defendants[7] and PwC. (Pls.' Memo at 9.) The question is whether SLUSA also precludes the remaining nine claims.

Claims I-III allege that Morgan Asset, Morgan Keegan, and PwC breached their contracts by failing to provide accurate valuations of the securities held by the Funds. (Compl. at ¶¶ 394, 406, 413.) Although a breach of

---

[7] Morgan Asset, Morgan Keegan, and Regions (See Compl. at ¶ 65.)

contract claim would be difficult to characterize as a claim for misrepresentation or omission, SLUSA requires dismissal based on the allegations contained in the complaint, not the state-law label placed on the claim. Miller v. Nationwide Life Ins. Co., 391 F.3d 698, 702 (5th Cir. 2004). Therefore, the Court must examine exactly what Plaintiffs allege in their substantive counts in the context of their entire complaint. See Anderson, 521 F.3d at 1287-88 (examining plaintiffs' claims individually based on complaint's language, not its labels).

Claim I, against Morgan Asset, rests on its alleged failure to value "the total assets and liabilities of the [Funds]" properly. (Compl. at ¶ 389.) The Funds' per-share redemption value is alleged to have been inaccurate because Defendants misrepresented a substantial portion of the Funds' assets as assets for which there was more than a limited market. (See, e.g., id. at ¶¶ 145-50.) If Morgan Asset had accurately represented that a large portion of the Funds' assets were illiquid, investors would have had a more accurate understanding of the value of the Funds' shares. This is a clear claim that Morgan Asset breached its contract by misrepresenting the value and type of assets in which the Funds invested. SLUSA therefore precludes Claim I.

Claim II, against Morgan Keegan, specifically alleges that the investment bank failed to "ensure that the Funds' registration statement and prospectuses did not contain <u>fraudulent or misleading</u> financial or other information <u>or omit material facts</u>." (<u>Id.</u> at ¶ 406.) SLUSA also precludes the Plaintiff's breach of contract claim against Morgan Keegan. <u>See</u> 15 U.S.C. § 77p(b)(1) (precluding claims that allege "untrue statement[s] or omission[s] of [] material fact[s]").

Although thinly pled, Claim III, against PwC, suffers from the same flaw. Claim III alleges that PwC "did not perform its services in the manner in which it was required by contract to perform." (<u>Id.</u> at ¶ 413.) The complaint's earlier sections make clear that PwC failed in its contractual duties because its regular audits failed to disclose the percentage of the Funds' securities for which regular market quotes were not available and omitted any qualifying or explanatory statements "emphasiz[ing] the uncertainty of the Funds' investments." (<u>Id.</u> at ¶¶ 262, 279.) Despite the artful pleading, the Complaint read as a whole makes clear that Claim III ultimately rests on an assertion that PwC failed to disclose material information to shareholders in its regular audit. Therefore, Claim III

cannot survive SLUSA's preclusion provisions. See 15 U.S.C. § 77p(b).

Claims VI-VIII allege that the officers and directors of the Funds, the corporate defendants, and Regions Bank acting as trustee for its clients' funds breached their fiduciary duties under Maryland law. According to the complaint, the Funds' officers and directors failed to make certain that the Funds' financial statements "accurately and fairly reflect[ed] the transactions and dispositions" of the Funds' assets. (Compl. at ¶¶ 436-37.) The corporate defendants also violated their fiduciary duties by mischaracterizing assets for which there was only a limited market as liquid, thereby violating the Funds' investment policies and causing "waste of the Funds' assets." (Compl. at ¶¶ 451-55.) Regions Bank failed to inform Morgan Asset or those for whom Regions acted as trustee that it was aware that the subprime mortgage market was in danger of imploding, although Regions had jettisoned its own subprime lending division. (Id. at ¶¶ 449-50, 460-61.) In each claim, the Plaintiffs allege that Defendants employed false financial statements and less-than-full disclosures to prevent investors from realizing the true risk they undertook when they continued to hold shares in the Funds. These three claims, therefore, involve "untrue

statement[s] or omission[s] of [] material fact[s]," and SLUSA precludes them. 15 U.S.C. § 77p(b)(1).

The final three claims allege negligence against Morgan Keegan, Morgan Asset, and PwC. The Plaintiffs state that Morgan Keegan negligently failed to inform class members and the Funds' management "of those matters, which under the circumstances pertaining to the Funds in 2006, they should have been informed." (Compl. at ¶ 473.) Morgan Asset similarly failed to inform the Plaintiffs of the risk they faced by investing in the Funds. (Id. at ¶ 484.) PwC ratified the Funds' issuance of inaccurate and incomplete financial statements that were not in compliance with Generally Accepted Accounting Principles ("GAAP"). (Id. at ¶ 501.) Allegations of breaching GAAP and the general duty of care by failing to inform the Plaintiffs of the actual risk inherent in their investment cannot survive SLUSA scrutiny. See G.F. Thomas Invs., L.P. v. Cleco Corp., 317 F. Supp. 2d 673, 684-685 (W.D. La. 2004) (finding that SLUSA precludes plaintiffs' claims based, inter alia, on violation of GAAP).

## IV. Conclusion

Plaintiffs' suit fails to meet the requirements of the first Delaware Carve-Out. Applying the Supreme Court's admonition to interpret SLUSA's preclusion provisions

broadly, Dabit, 547 U.S. at 86, all of the Plaintiffs' claims allege facts dependent on findings of deceit, fraud, misrepresentation, or omission of a material fact.  Removal of this action from state court was, therefore, proper. See 15 U.S.C. §77p(c).  Where removal is proper, SLUSA "avails [defendants] of a federal forum in contemplation not of further litigation over the merits of a claim brought in state court, but of termination of the proceedings altogether."  Kircher, 547 U.S. at 644 n.12. Any effort at amendment would be futile because allegations of omissions or other deceitful activity are irreparably interwoven throughout Plaintiffs' causes of action.  Cf. Fed. R. Civ. P. 15(a) (generally giving a party the right to amend its complaint before a responsive pleading is served).  Therefore, the Court DENIES Plaintiff's motion to remand and DISMISSES Plaintiff's suit WITH PREJUDICE.  See G.F. Thomas, Invs., 317 F. Supp. 2d at 685 (dismissing case with prejudice where any effort at amendment would not save the action from SLUSA preclusion); see also In re Enron Corp. Sec. Derivative, & ERISA Litig.), 535 F.3d at 342 (affirming district court's SLUSA dismissal of complaint with prejudice).

So ordered this _____ day of September, 2009.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE